UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WESTFALL AUTO SALES,
LLC,** *et. al.,*

      **Plaintiffs,**

  v.

**ZURICH AMERICAN INSURANCE
COMPANY,** *et al.***,**

      **Defendants.**

Case No. 2:18-cv-1448
**JUDGE EDMUND A. SARGUS, JR.**
**Chief Magistrate Judge Elizabeth Preston Deavers**

## OPINION AND ORDER

Defendants Zurich American Insurance Company ("Zurich"), Robert E. Watson, and Towing Insurance Specialists ("Towing") (collectively "Defendants") have filed a Motion for Summary Judgment. (ECF No. 41.) Additionally, Defendants have filed a Motion for Leave to Supplement Motion for Summary Judgment and to File Additional Exhibits. (ECF No. 43.) Plaintiffs Westfall Auto Sales, LLC ("Westfall") and Incident Management Solutions Ohio, LLC ("IMS") (collectively "Plaintiffs") have not responded in opposition to Defendants' Motion for Leave to Supplement but have responded in opposition to Defendants' Motion for Summary Judgement. (ECF No. 49.) The time for responses has passed and thus, the motions are both ripe for review. For the following reasons, Defendants' motions (ECF Nos. 41, 43) are **GRANTED**.

**I.**

The claims in this case were originally filed in the Harrison County Court of Common Pleas. (Defs.' Mot. Summ. J. at Ex. H, ECF No. 41.) On October 5, 2017, the Harrison County Court of Common Pleas dismissed the claims without prejudice. (*See id.*) On October 5, 2018, the claims were refiled in the Harrison County Court of Common Pleas and then removed to this Court. (Compl. at ¶¶ 1–2, ECF No. 2.)

The events giving rise to this case began on May 9, 2011, at the scene of a motor vehicle accident. (*Id.* at ¶ 8.) On May 9th, Michael D. Hamrick was driving a truck hauling a trailer containing hydrochloric acid.[1] (*Id.* at ¶ 17–21.) First Class Transport, Incorporated ("First Class") owned the trailer. (*Id.* at ¶ 18.) James N. Saunders struck the rear of Mr. Hamrick's trailer during the accident. (*Id.* at ¶¶ 16–17.)

The Ohio State Highway Patrol summoned Plaintiffs to the scene of the accident. (*Id.* at ¶ 28.) Plaintiffs performed extensive services at the scene of this accident including: restricting access to the scene by third persons; patching First Class's trailer to prevent substances from leaking out; recovering and removing a detached axel from the trailer; procuring a subcontractor with a crane to assist in preparing the trailer for transport from the scene; securing the trailer to be transported from the scene; clearing the scene of spilled fluids and other spilled substances and debris; and transporting the trailer from the scene.[2] (*Id.* at ¶ 29.)

Zurich insured First Class, so Plaintiffs sent the towing bill for the trailer to Zurich. (Watson Dep. at 49–51, ECF No. 42.) Due to the size of the towing and recovery bill that resulted from the accident, Zurich sent the bill to Mr. Watson, a specialist in insurance bills, to evaluate the amount due. (*Id.*; Defs.' Mot. Summ. J. at Ex. A; Watson Aff. ¶ 13, ECF No. 41-1.) Mr. Watson is an employee and co-owner of Towing, which he formed to review towing bills. (Watson Aff. at ¶ 3; Watson Dep. at 8.) Mr. Watson asserts he is not an employee of Zurich and Zurich did not control the means or manner by which he did his job. (*Id.* at ¶¶ 5, 6, 8, 22–23.) Instead, Mr. Watson asserts he is "completely in charge of how [he] go[es] about reviewing and evaluating towing

---

[1] The parties dispute whether the trailer contained hydrochloric acid at the time of the accident or whether it had been emptied. (Compl. at ¶ 19–21; Defs.' Mot. File Suppl. Mot. Summ. J. File Additional Exs. at Ex. D at 2.)

[2] After the accident, Westfall held the trailer, and thus, a replevin action was filed in Franklin County. (Defs.' Mot. Summ. J. at 2–3 (citing 11 CV 007601).) Plaintiffs brought in Defendants through a third-party Complaint. (*Id.*) The property was returned and the case against Defendants was dismissed without prejudice. (*Id.*)

2

bills." (*Id.* at ¶ 11.)

To facilitate the evaluation Mr. Watson thrice contacted Westfall, through Mr. and Mrs. Westfall, by phone.[3] (Audio Recs., ECF No. 43 at PageID # 285, 298, 311.) Mr. Watson did not tell Zurich he was a Westfall employee. (Watson Dep. at 55–54; Watson Aff. at ¶ 14, 27.) The conversations centered around Mr. Watson's opinion that Westfall had misapplied the price per pound billing and therefore the bill was excessive. (*Id.* at 54, 81–82; Watson Aff. at ¶ 19.) The parties disagreed almost immediately as to whether the bill was excessive. (*Id.* at 87; Watson Aff. at ¶¶ 14, 18.) Mr. Watson states he did not attempt to disparage or mislead Westfall, or anyone else, or to interfere with Plaintiffs' business during these conversations. (*Id.* at ¶¶ 29–32.)

On October 5, 2012, the Ohio Department of Insurance ("ODI") received a complaint that IMS, one of the Plaintiff-LLCs created by the Westfalls, had engaged in misconduct including theft of diesel fuel and the generation of "outrageous" bills. (ECF 49-3 at PageID #381.) On November 8, 2012, the ODI contacted the Plaintiffs' opposing counsel in the Franklin County litigation requesting information on the May 19, 2011 collision and cleanup, and following up with a subpoena duces tecum. (*Id.* at PageID #406, 409.) Mr. Watson stated that he does "not recall calling the Ohio Department of Insurance regarding the Westfall Towing bill nor ha[s] [he] been shown any paperwork or complaint forms that indicate [he] made a call to or filed a complaint with the Department of Insurance." (Watson Aff. at ¶ 29.) However, Mr. Watson has initiated complaints against other towing companies. (Watson Dep. at 117, 128, ECF No. 42-1.)

Plaintiffs raise two claims: fraud and tortious interference. (Compl. at ¶¶ 35–55.) Both claims arise out of Mr. Watson's conversations with the Westfalls and his alleged accompanying actions. (*See* Compl. at ¶¶ 40–48.) Plaintiffs seek compensation for costs and attorneys' fees that

---

[3] Defendants assert that Plaintiffs surreptitiously recorded these conversations. (Watson Second Aff. at ¶ 4.) These conversations are exhibits D, E, and F, to Plaintiff's motion for leave to supplement its motion for summary judgment.

3

resulted from Defendants' actions as well as punitive damages. (*See id.*)

On March 17, 2020, Defendants filed a motion for summary judgment. (*See* Mot. Summ. J.) On April 10, 2020, Defendants filed a motion for leave to supplement their motion for summary judgment with three additional exhibits. (Defs.' Mot. Leave Suppl. Mot. Summ J. & File Additional Exs., ECF No. 43.) Plaintiffs' response to Defendants' motion for summary judgment was due April 7, 2020. S.D. Ohio Civ. R. 7.2(a)(2). On April 13, 2020, Plaintiffs had not yet responded, and the Court ordered Plaintiffs to file a motion seeking leave to file an untimely response. (ECF No. 44.) Plaintiffs filed a motion for an extension of time to file their response, which the Court granted. (ECF Nos. 45–46.) Plaintiffs' response was due April 28, 2020. (*Id.*) On April 28, 2020 Plaintiffs filed a second motion for an extension of time to file their response, which the Court granted. (ECF Nos. 47–48.) Plaintiffs did not respond by May 4, 2020, as required by the Court's order. (*Id.*)

On July 8, 2020, Plaintiffs filed a motion for leave to file their response, accompanied by their response, and the Court granted Plaintiffs' motion. (ECF Nos. 49, 50, 55.) Defendants then filed an unopposed motion for an extension of time to file its reply, which the Court also granted. (ECF Nos. 56, 57.) Defendants then timely filed their reply. (ECF No. 58.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has

the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III.

Defendants have asked for leave to file three supplemental exhibits to their motion for summary judgment. (Defs.' Mot. Leave Suppl. Mot. Summ. J. and File Additional Exs. at 1.) The exhibits are transcripts from phone calls. (*Id.* at 2.) Defendants state Plaintiffs produced the call recordings less than one week prior to the dispositive motion deadline. (*Id.*) Defendants then encountered a delay in obtaining transcripts of the calls and a further delay in filing them due to a

transition to working from home necessitated by the Covid-19 pandemic and associated stay at home orders. (*Id.*) Defendants allege they did not seek to extend the dispositive motion deadline because the Court had previously expressed concern about extending deadlines. (*Id.*)

Defendants contend the transcripts are relevant because Plaintiffs allege Mr. Watson engaged in misconduct during the calls. (*Id.*) Additionally, Defendants note that the addition of these exhibits will not prejudice Plaintiffs because they produced the recordings. (*Id.*) Finally, Defendants note they are not providing any additional argument, solely these transcripts. (*Id.*)

Federal Rule of Civil Procedure 16(b) states that a scheduling order may be modified for good cause with the judge's consent. *See also* Fed. R. Civ. Pro. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). Additionally, the local rules state that no additional memoranda shall be submitted, beyond the response in opposition and the reply in support, except upon leave of court for good cause shown. S.D. Ohio Civ. R. 7.2(a)(2). Here, the Court finds good cause has been shown and any neglect was excusable. Defendants obtained the evidence from Plaintiffs close to the dispositive motion deadline. The Court had previously expressed concern over the extension of deadlines. (*See* ECF No. 7.) Additionally, the Court is cognizant of the fact that Ohio's Stay at Home Orders in response to the COVID-19 pandemic have caused many people to transition to working from home with associated delays.[4] Finally, Plaintiffs are not prejudiced for they produced the transcripts. Defendants' motion to supplement is **GRANTED**. The Court will consider the additional exhibits.

---

[4] For example, on March 19, 2020, Ohio's Governor Mike DeWine and Director of the Ohio Department of Public Health, Dr. Amy Acton, ordered "all individuals currently living within the State of Ohio [] to stay at home or at their place of residence except as allowed in th[e] Order." *See https://coronavirus.ohio.gov/static/DirectorsOrderStayAtHome.pdf.*

**IV.**

Defendants argue they are entitled to summary judgement on both claims because there is not sufficient evidence to create a genuine dispute of material fact as to either claim.

1. **Fraud**

The Plaintiffs allege that Mr. Watson committed actual or constructive fraud, as well as negligent or intentional misrepresentation, during the telephone conversations with Mr. and Mrs. Westfall. (Compl. at ¶ 50.) Defendants argue there is no evidence of the elements of fraud. (Defs.' Mot. Summ. J. at 9–12.) Defendants argument is well-taken.

"A claim of fraudulent misrepresentation arises when a party is induced to enter into an agreement through fraud or misrepresentation." *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011) (citing *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998)). The elements of fraud under Ohio law are:

> (1) a representation or, when there is a duty to disclose, a concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance.

*Id.* (citing *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998)). The elements of negligent misrepresentation likewise include a requirement of justifiable reliance. *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (Ohio 1989).

The Plaintiffs allege that Mr. Watson misrepresented himself as calling for Zurich, (Resp. at 4, ECF No. 49; ECF No. 43-1 at 4), that Mr. Watson represented that the First-Class Transport tank was empty, (*Id.*; ECF No. 43-1 at 2), and that the "price per pound" billing system is no longer widely used in the industry. (*Id.*; ECF No. 43-2 at 2–4, 6). Defendants argue that even if these were facts, which Defendants believe they are not and instead are largely opinions, there is no evidence

7

to support a finding in favor of Plaintiffs on the third through sixth elements of fraud.

Because there is no evidence of the fifth element of fraud—a justifiable reliance on the representations—the Court need not delve into the other elements. The transcripts of the calls confirm the conversations were hostile with many disagreements. (*See e.g.,* Defs.' Mot. File Suppl. Mot. Summ. J. & File Additional Exs. at Ex. D ("Mr. Watson: well, the problem I have with [the tanker] is, you know, it was empty. Ms. Westfall: No, sir, it wasn't. It still had several gallon[s]").) Further, even if Plaintiffs believed Watson was an agent of Zurich, he was neither an agent of Plaintiffs nor in a position of trust.

Plaintiffs argue that their reliance is shown by their "need to deal with Mr. Watson" and "then to defend against his false devaluation of their services ever since." (Pls. Resp. at 14, ECF No. 49). However, such action demonstrates disagreement, not reliance. If Plaintiffs had relied on Mr. Watson's statements, they would have lowered the bill which Mr. Watson expressed was appropriate. Instead, the Plaintiffs chose to "defend against his false devaluation." (*Id.*) Because these actions do not constitute reliance, Plaintiffs have not presented evidence that there was reliance on any of Mr. Watson's statements. Thus, there is no genuine dispute of material fact as to the fifth element of fraud, a justifiable reliance.[5]

Accordingly, Defendants' motion for summary judgment as to Plaintiffs' fraud claim is **GRANTED**.

---

[5] Plaintiffs' only allegations regarding fraud are that Mr. Watson made statements which constituted fraud. (*See* Resp. at 4, ECF No. 49.) There are no allegations that Zurich itself or Towing itself made any false representations. Instead, Plaintiffs argue that Mr. Watson acted as an agent for Zurich and an owner and employee for Towing. (*See id.* at 2, 12–14) Thus, because the Court has found Mr. Watson cannot be liable for fraud, neither can Zurich or Towing.

**2. Tortious Interference**

Plaintiffs allege that Mr. Watson and/or Zurich initiated a complaint against Westfall with the Ohio Department of Insurance which they claim constituted tortious interference. (Compl. at ¶¶ 53–55.) Defendants argue there is no evidence to support this claim. (Defs.' Mot. Summ. J. at 12.)

The elements of tortious interference with a business relationship, in Ohio, are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 949 (S.D. Ohio 2003) (quoting *Barilla v. Patella*, 760 N.E.2d 898, 904 (Ohio Ct. App. 2001)).[6]

Defendants argue there is no evidence of a business or contractual relationship or that Mr. Watson, or anyone else from Zurich or Towing, interfered with such a relationship. The Court agrees. Assuming that Mr. Watson is the true author of the complaint, the Plaintiffs have nonetheless failed to include any evidence establishing that there was a business or contractual relationship, or that Defendants interfered with it. Mr. Watson states that he "did not attempt in any way to disparage Westfall Towing or interfere with their business . . . ." (Watson Aff. at ¶ 31.) In contrast, the Plaintiffs' complaint does not specify with whom Plaintiff had the alleged business relationship, and the Plaintiffs have not since submitted any evidence of a specific business relationship that was interfered with by the ODI complaint.[7] There is no further evidence regarding

---

[6] The Complaint is not entirely clear as to whether it claims tortious interference with a business relationship or with a contractual relationship. The elements of the two claims, however, are nearly identical with the difference being that tortious interference with a business relationship includes intentional interference with prospective contractual relations not yet reduced to a contract. *Miami Valley Mobile Health Servs. v. ExamOne Worldwide*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012) (citing *Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780–81 (Ohio Ct. App. 2002)).

[7] Plaintiffs included in their response an unsigned "affidavit" purporting to show a specific business relationship that was allegedly interfered with. This Court declines to consider that document. "[A]ffidavits must be signed and properly attested to be cognizable under Rule 56." *Sfakianos v. Shelby County Government*, 481 Fed.Appx.244, 245,

this claim and thus, there is no genuine dispute of material fact that Defendants cannot be held liable for tortious interference.

Accordingly, Defendants' motion for summary judgment as to Plaintiffs' tortious interference claim is **GRANTED**.

**IV.**

In conclusion, Defendants' Motion for Leave to Supplement its Motion for Summary Judgment and to File Additional Exhibits (ECF No. 43) is **GRANTED** and Defendants' Motion for Summary Judgment (ECF No. 41) is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

**1/11/2021**                                             s/Edmund A. Sargus, Jr.
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                           **UNITED STATES DISTRICT JUDGE**

---

2012 WL 2044372 (6th Cir. 2012) (citing *Nassif Ins. Agency, Inc. v. Civic Property and Cas. Co.*, No. 03-2618, ___ Fed. Appx. ___, 2005 WL 712578, at *3 (6th Cir. 2005).